UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

MAX ZWEIZIG,

        Plaintiff,

  v.

TIMOTHY C. ROTE, a citizen of the state of Oregon; NORTHWEST DIRECT TELESERVICES, INC., an Oregon for-profit corporation; NORTHWEST DIRECT MARKETING OF OREGON, INC., an Oregon for-profit corporation; NORTHWEST DIRECT MARKETING, INC., an Oregon for-profit corporation; and DOES 1 through 10,

        Defendants.

Case No. 3:14-cv-00406-ST

FINDINGS AND RECOMMENDATION

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Max Zweizig ("Zweizig"), filed this action on March 11, 2014, against his former employer, Northwest Direct Teleservices, Inc. ("NDT"), its principal owner, sole director and controlling shareholder, Timothy C. Rote ("Rote"), two other corporations which Rote allegedly controls, NDT Marketing of Oregon, Inc. ("NDM of Oregon") and NDT Marketing, Inc. ("NDM"), as well as against "Does 1 through 10."

1 – FINDINGS AND RECOMMENDATION

For about 18 years, Rote has operated telemarketing businesses which included call centers, including one in Oregon and one in Iowa, providing in-bound and out-bound telemarketing services to a variety of clients nation-wide. Amended Complaint (docket #17), ¶ 7. Rote is the sole shareholder of the corporate defendants. *Id*, ¶ 18.

Zweizig worked for NDT as the Director of the IT Department overseeing the IT services of NDT's Oregon and Iowa call centers from September 1, 2001, until November 14, 2003, when he was terminated. *Id*, ¶ 14. Following his termination, NDT commenced arbitration proceedings against Zweizig who then filed counterclaims against NDT for retaliatory discharge and common law wrongful discharge. *Id*, ¶ 16. The arbitration proceedings consumed five years. *Id*, ¶ 20. Ultimately, on April 5, 2011, Zweizig obtained an Arbitration Award against NDT in the amount of $75,375.00. *Id*, ¶ 24.

Several months later, NDT filed an action in Clackamas County Circuit Court for the State of Oregon to vacate the Arbitration Award. *Id*, ¶ 25. Zweizig removed that case to this court. *Northwest Direct Teleservices, Inc. v. Zweizig* ("*NDT I*"), Case No. 3:11-cv-910-PK. On February 14, 2012, Judge Anna J. Brown entered a Judgment in *NDT I* confirming the Arbitration Award. *Id*, ¶ 27.

Zweizig registered the Judgment as a foreign judgment in the Clackamas County Circuit Court for the State of Oregon. *Id*, ¶ 28. However, Zweizig alleges that, during the years it took to obtain that judgment, NDT, under the control of Rote, transferred all of its property to Rote and corporations under his control. *Id*, ¶¶ 31-36. Because NDT has satisfied no part of the Judgment, Zweizig filed this case. *Id*, ¶ 38.

Based on his inability to collect his Judgment against NDT, Zweizig alleges three claims: (1) a claim against NDT, NDM, and NDM of Oregon for violations of two provisions of

Oregon's Uniform Fraudulent Transfer Act, ORS 95.230 (First Claim, Count One) and ORS 95.240 (First Claim, Count Two); (2) a claim against Rote seeking to pierce the corporate veil on both an alter ego theory (Second Claim, Count One) and an agency theory (Second Claim, Count Two); and (3) an alternative claim against Rote and NDT for fraud (Third Claim).

Now before the court is defendants' Motion to Dismiss (docket #19) under FRCP 12(b)(1) for lack of subject matter jurisdiction and FRCP 12(b)(6) for failure to state a claim. For the reasons that follow, that motion should be granted in part and denied in part.

## FINDINGS

### I. Subject Matter Jurisdiction

#### A. Legal Standard

When a motion to dismiss for lack of jurisdiction is filed in conjunction with other motions to dismiss under FRCP 12, the court normally considers the issue of jurisdiction first. *Allstate Ins. Co. v. Hughes*, 358 F3d 1089, 1093 (9th Cir 2004) (citation omitted) ("We cannot consider the merits of the appeal before assuring ourselves that the district court had jurisdiction."). Doing so prevents a court without subject matter jurisdiction from prematurely dismissing a case with prejudice. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 US 422, 430-31 (2007) (citation omitted); *Potter v. Hughes*, 546 F3d 1051, 1056 n2 (9th Cir 2008) (discussing *Sinochem*).

Federal courts have limited jurisdiction, and a case is presumed to fall outside that jurisdiction unless proven otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 US 375, 377 (1994). Under FRCP 12(h), the court is required to dismiss an action "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter." *Augustine v. United States*, 704 F2d 1074, 1077 (9th Cir 1983). The jurisdictional statute is

strictly construed. *See Lang v. Windsor Mount Joy Mut. Ins. Co.*, 487 F Supp 1303 (ED Pa), *aff'd*, 636 F2d 1209 (3rd Cir 1980); *Hawes v. Club Ecuestre El Comandante*, 598 F2d 698, 702 (1st Cir 1979) (citations omitted).

### B. Diversity Jurisdiction

The Amended Complaint alleges that this court has diversity jurisdiction under 28 USC § 1332(a)(1). Amended Complaint, ¶ 1. Zweizig is a citizen of New Jersey. *Id*, ¶ 2. Rote is a citizen of Oregon, as are the three named corporate defendants. *Id*, ¶¶ 3-6. All "Doe" defendants, whether individual or corporate, are alleged to be citizens of states other than New Jersey. *Id*, ¶ 7. Despite the diverse citizenship between the parties, defendants contend that this court lacks diversity jurisdiction because neither the First Claim for fraudulent transfer nor the Second Claim seeking to pierce the corporate veil expressly states an amount in controversy.

All claims incorporate by reference all prior allegations which detail the pre-Judgment proceedings, including both the arbitration proceedings and subsequent lawsuit resulting in entry of the Judgment in favor of Zweizig. *Id*, ¶¶ 39, 43, 46, 52, 54 (each incorporating ¶¶ 1-38). All three claims seek in different ways to collect the Judgment against NDT by following NDT's assets (First Claim), by piercing NDT's corporate veil (Second Claim), and by seeking damages for fraud (Third Claim). The amount in controversy for all claims is at least the amount of the Judgment confirming the arbitration award. *Chapman v. Deutsche Bank Nat'l Tr. Co.*, 651 F3d 1039, 1045 n2 (9th Cir 2011) (citations omitted) (in actions seeking declaratory or injunctive relief, the measure of the amount in controversy is the value of the "object of the litigation"). The Judgment is for $75,375.00, no part of which has been paid. Amended Complaint, ¶¶ 31, 38.

With respect to the First Claim for fraudulent transfer, defendants assert that the amount in controversy is not the amount owed by NDT on the Judgment, but is the value of the transferred assets that Zweizig is pursuing which is not pled. However, Zweizig alleges that in November 2009, NDT's call centers were "producing monthly revenues of approximately $350,000" (Amended Complaint, ¶ 19) and that in May 2012, NDT transferred all of its assets to avoid Zweizig's Judgment. Although it could be better pled, it is reasonable to infer from these allegations that the transferred assets equal or exceed the amount of the Judgment. Discovery may well reveal that NDT transferred fewer assets. But as long as the amount sought in the Complaint is asserted in good faith, the court is not ousted of diversity jurisdiction simply because plaintiff fails to recover more than $75,000.00. *St. Paul Mercury Indem. Co. v. Red. Cab Co.*, 303 US 283, 295-96 (1938); *Grinnell Mut. Reinsurance Co. v. Shierk*, 121 F3d 1114, 1117 (9th Cir 1997).

With respect to the Second Claim, Zweizig alleges that Rote improperly exercised his control over NDT to conceal, transfer, and otherwise divert NDT's assets to avoid satisfying the Judgment. Thus, at least $75,000.00 is the amount in controversy for the Second Claim against Rote.

The Third Claim alleges that due to the fraud committed by Rote and NDT, Zweizig "invested substantial sums in order to prosecute his claims" and, as a result, "has been damaged in the amount of at least $100,000." *Id*, ¶ 60. The Third Claim further alleges that Zweizig is entitled to recover punitive damages in the sum of $500,000 due to his economic distress. These allegations place the amount in controversy well over the $75,000.00 threshold.

All three claims allege a sufficient amount in controversy, and all defendants are alleged to be citizens of states other than the state of which Zweizig is a citizen. Thus, this court has jurisdiction under 28 USC § 1332.

Should this court have diversity jurisdiction over only one or two of the three claims, the parties disagree whether this court has supplemental (formerly known as ancillary) jurisdiction over the remaining claim(s) under 28 USC § 1367. Because this court finds that it has original jurisdiction over all claims based on diversity of citizenship under 28 USC § 1332, it need not and does not address the issue of supplemental jurisdiction, except with respect to defendants' claim preclusion.

## II. Failure to State A Claim

### A. Statutes of Limitations

Defendants first argue that the Second and Third Claims should be dismissed because they are barred by the relevant statutes of limitation.

#### 1. Second Claim

The Second Claim seeks to enforce the Judgment individually against Rote under either an "alter ego" (Count One) or "agency" (Count Two) theory. Amended Complaint, ¶¶ 46-53.

The statute of limitations in Oregon for a breach of contract claim is six years. ORS 12.080. Defendants contend that the contract at issue is Zweizig's employment contract and that any breach of that contract by defendants began in April 2006 when NDT commenced arbitration proceedings against Zweizig. Amended Complaint, ¶ 16. Because Zweizig filed this suit more than six years later, defendants argue that it is time-barred.

However, the Second Claim is not a breach of contract claim. Zweizig does not allege that Rote breached any contract. Instead, he seeks to collect his Judgment against NDT from

Rote, its sole shareholder, because Rote transferred all of NDT's assets in May 2012 to prevent Zweizig from collecting his Judgment against NDT. A claim to pierce the corporate veil and pursue a corporate shareholder may be brought as a breach of contract action. For example, in *Amfac Foods, Inc. v. Int'l Sys. & Controls Corp.*, 294 Or 94, 108, 654 P2d 1092, 1101 (1982), the plaintiff alleged that it suffered damages as a result of a breach of contract by the defendant corporation and its parent corporation based on "piercing the corporate veil," "alter ego," and agency principles.

In addition to "piercing the corporate veil" through a breach of contract claim, Oregon also recognizes the type of suit alleged by Zweizig in the Second Claim to collect NDT's debt from its shareholder. *See Schlecht v. Equitable Builders, Inc.*, 272 Or 92, 535 P2d 86 (Or 1975) (*en banc*) (suit by judgment creditor of wholly owned subsidiary seeking decree to pierce corporate veil and enforce judgments against parent corporation). However, it is far from clear what statute of limitations applies to such a claim. Since Zweizig is attempting to enforce a judgment, the Second Clam may be governed by ORS 12.070 which requires an "action upon a judgment or decrees of any court" to "be commenced within 10 years." Alternatively, the Second Claim may be governed by the 10-year statute of repose. ORS 12.140 ("An action for any cause otherwise provided for shall be commenced within 10 years.").

In order to pierce the corporate veil and collect a corporate debt from a shareholder, "the plaintiff must allege and prove not only that the debtor corporation was under the actual control of the shareholder but also that the plaintiff's inability to collect from the corporation resulted from some form of improper conduct on the part of the shareholder." *Amfac Foods, Inc.*, 294 Or at 108, 654 P2d at 1101. Thus, this type of claim or remedy is premised on the improper conduct on the part of a shareholder who, in this case, is Rote. Rote's allegedly improper conduct

7 – FINDINGS AND RECOMMENDATION

occurred in May 2012, less than two years before the filing of this action on March 11, 2014. Thus, the Second Claim is not time-barred.

### 2. **Third Claim**

The Third Claim is alleged against Rote and NDT as an alternative to the First Claim. It alleges that Rote testified under oath on May 24, 2010, in the Arbitration Proceeding that NDT was the parent and sole shareholder of his other active telemarketing companies and owned the call centers, contracts for telemarketing services, right to revenues from the contracts, and the deposit accounts into which the revenues were deposited. Amended Complaint, ¶ 55. Zweig had no reason to suspect that this testimony was false and relied on it. *Id*, ¶ 56. If NDT divested itself of the assets prior to May 24, 2010, then Rote's representations were false. *Id*, ¶ 57. Zweig had no knowledge that the representations were false until after May 2012 when he tried to collect the Judgment. *Id*, ¶ 58. Had he known that NDT had divested its assets prior to May 24, 2010, then he would not have invested substantial sums to prosecute his claims to the Arbitration Award and reduce it to a Judgment, causing him damages of at least $100,000. *Id*, ¶ 60.

Defendants first argue that Third Claim fails to state a claim because it is barred by the statute of limitations. Fraud claims must be commenced within two years from the discovery of the fraud. ORS 12.110(1). Because Rote's alleged misrepresentations were made on May 24, 2010, defendants argue that the statute of limitations had expired when Zweig filed this case on March 11, 2014. However, ORS 12.110(a) states that the two-year limitation "shall be deemed to commence only from the discovery of the fraud or deceit." Defendants' argument ignores Zweig's allegation that he did not discover that Rote's representations were false until May 2012. Amended Complaint, ¶ 58. Therefore, he timely filed this case within the two-year statute of limitations.

8 – FINDINGS AND RECOMMENDATION

B. **Claim Preclusion**

Defendants also argue that the First and Second Claims should be dismissed as barred by claim preclusion. Because Zweizig has already prosecuted one action against NDT to Judgment, they assert that he cannot seek to prosecute this second action that "is based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action." *Rennie v. Freeway Trans.*, 294 Or 319, 323, 656 P2d 919, 921 (1982). Although conceding that Rote, NDM, and NDM of Oregon are not the same parties as NDT, defendants argue that they are in privity with NDT to which the bar of *res judicata* applies. *United Bank of Denver v. Gardos*, 80 Or App 342, 349, 722 P2d 1261, 1265-66 (1986) (citation omitted). However, Zweizig could not have filed either the First or Second Claim in either the underlying arbitration or *NDT I* because he was wholly unaware of the allegedly fraudulent transfers and misrepresentations until well after entry of the Judgment when he was attempting to collect it.

As clarified at the hearing on the motion, defendants' argument is premised on a related argument, namely that this court lacks enforcement power over "new actions in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment." *Peacock v. Thomas*, 516 US 349, 351 (1996). Instead, they contend that Zweizig can only prosecute his First Claim for fraudulent transfers against third parties by seeking to amend and adding that claim to *NDT I* and cannot prosecute his Second Claim to pierce the corporate veil at all.

In support, defendants rely primarily on *Jones v. N.W. Telemarketing, Inc.*, 136 F Supp2d 1166, 1169 (D Or 2001), which applied *Peacock* to a post-judgment motion by a plaintiff to amend the pleadings to add parties to whom the defendant had fraudulently transferred its assets

9 – FINDINGS AND RECOMMENDATION

to avoid or delay payment of the judgment.  Judge Robert E. Jones acknowledged that federal courts are authorized "to enforce their judgment by setting aside fraudulent conveyances of the judgment debtor." *Id* at 1168.  However, citing *Peacock*, Judge Jones held that actual liability for the underlying judgment cannot be imposed "on new defendants not parties to the original action." *Id* at 1169.  Instead, he concluded that a judgment creditor can only prosecute "supplemental proceedings to collect assets improperly transferred from individuals not parties to the underlying action." *Id*, citing *Thomas, Head & Greisen Emps. Trust v. Buster*, 95 F3d 1449 (9th Cir 1997) .  Accordingly, he denied plaintiff's request to hold grantees of an allegedly fraudulent conveyance as jointly and severally liable for the judgment, but allowed their joinder to collect the allegedly transferred assets.  *Id.*

There is no question that Zweizig could file supplemental proceedings in *NDT I* against third parties to reach assets of NDT under the control of those third parties in order to satisfy the original judgment.  However, it is not necessary that he do so.  The only distinctions between *NDT* and this case are the civil case number and the assigned judge.  Defendants have pointed to no authority that jurisdiction is destroyed simply because the supplemental proceedings are filed under a new case number in the same court.  To the contrary, many courts, including the Ninth Circuit, have permitted subsequent lawsuits seeking to avoid fraudulent transfers.  *E.g., Donell v. Kowell*, 533 F3d 762, 769 (9th Cir 2008); *Scholes v. Lehmann*, 56 F3d 750 (7th Cir 1995).  Thus, claim preclusion does not bar the First Claim against NDT, NDM, and NDM of Oregon to disgorge fraudulently conveyed assets.

The Second Claim against Rote, which is based on an "alter ego" or "agency" theory, presents a different problem, as recognized in a footnote by Judge Jones.  Accepting the plaintiff's argument that the additional named parties may be alter egos of the original defendant

and, thus, not new parties, he characterized that approach as "a new substantive theory, and as such, does not fall within the residual federal jurisdiction of the original action." *Jones*, 136 F Supp 2d at 1169 n2, citing *U.S.I. Props. Corp. v. M.D. Const. Co.*, 230 F3d 489 (1st Cir 2000).

In *U.S.I. Props. Corp.*, the First Circuit, relying on *Peacock*, thoroughly analyzed this issue, concluding that it had no federal enforcement jurisdiction over a new federal court action to collect a judgment against a new party as the alter ego of the judgment debtor. "[A]lthough federal courts are courts of limited jurisdiction, they often retain residual federal jurisdiction over postjudgment enforcement proceedings flowing from their original jurisdiction over the action." *U.S.I. Props. Corp.*, 230 F3d at 496. This ancillary enforcement jurisdiction allows the court to enforce state law in order "to reach assets of the judgment debtor in the hands of third parties in a continuation of the same action, such as garnishment or attachment . . . ." *Id* (citations omitted). However, postjudgment proceedings to collect a judgment do not extend to "an independent controversy with a new party, attempting to shift liability . . . ." *Id* at 498. When a "postjudgment proceeding presents a new substantive theory to establish liability directly on the part of a new party, some independent ground is necessary to assume federal jurisdiction over the claim, since such a claim is no longer a mere continuation of the original action." *Id* (citations omitted). "Like piercing the corporate veil, an alter ego claim presents a substantive theory seeking to establish liability on the part of a new party not otherwise liable." *Id* at 499 (citations omitted). Had the new party been named a defendant in the original action, the court would have had no diversity jurisdiction. Thus, it lacked an independent ground for federal jurisdiction over the alter ego claim.

As in *U.S.I. Props. Corp.*, the Second Claim does not seek simply to collect the Judgment, but seeks to establish liability for the Judgment on the part of a third party, Rote,

11 – FINDINGS AND RECOMMENDATION

based on his "alter ego" or "agency" role for the judgment debtor, NDT. Therefore, it is a new claim alleging independent acts of wrongdoing by a third party for which this court must have independent jurisdiction. But unlike *U.S.I. Props. Corp.*, independent jurisdiction is not lacking here. As discussed above, this court has jurisdiction over the Second Claim under 28 USC § 1332. Therefore, defendants are not entitled to dismissal of the Second Claim.

### C. Failure to Sufficiently Allege Fraud

Finally, defendants argue that the Third Claim fails to allege a necessary element for fraud, namely that any statements made by Rote were false. Instead, Zweizig pleads only that "if" NDT had divested itself of assets prior to May 24, 2010, then Rote's statements were false. In response, Zweizig requests leave to amend this claim to remove the word "if" and to expressly allege that Rote's statements were false. Defendants have submitted no reason to deny that request. Therefore, the Third Claim should be dismissed with leave to amend.

### RECOMMENDATION

For the reasons set forth above, defendants' Motion to Dismiss (docket #19) should be GRANTED as to the Third Claim, which should be dismissed with leave to replead, and otherwise should be DENIED.

### SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due Monday, November 10, 2014. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

///

///

///

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED  October 22, 2014.

s/ Janice M. Stewart  
Janice M. Stewart  
United States Magistrate Judge

13 – FINDINGS AND RECOMMENDATION