UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

MAX ZWEIZIG,

        Plaintiff,

   v.

TIMOTHY C. ROTE, a citizen of the state of
Oregon; NORTHWEST DIRECT
TELESERVICES, INC., an Oregon for-
profit corporation; NORTHWEST DIRECT
MARKETING OF OREGON, INC., an
Oregon for-profit corporation;
NORTHWEST DIRECT MARKETING,
INC., an Oregon for-profit corporation;
NORTHWEST DIRECT OF EUGENE,
INC., aka Northwest Direct Marketing, Inc.;
NORTHWEST DIRECT OF IOWA, INC.,
an Iowa for-profit corporation; ROTE
ENTERPRISES, LLC, an Oregon limited
liability company; and NORTHWEST
DIRECT MARKETING, INC., aka
Northwest Direct Marketing (Delaware), Inc.
a Delaware corporation,

        Defendants.

Case No. 3:14-cv-00406-ST

FINDINGS AND
RECOMMENDATIONS

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Max Zweizig ("Zweizig"), filed this action on March 11, 2014, against: his

former employer, Northwest Direct Teleservices, Inc. ("NDT"); NDT's principal owner, sole

director and controlling shareholder, Timothy C. Rote ("Rote"); two other corporations which Rote allegedly controls, Northwest Direct Marketing of Oregon, Inc. ("NDMO") and Northwest Direct Marketing, Inc. ("NDM"); and "Does 1 through 10." This court previously denied defendants' motion to dismiss, except as to the Third Claim. *See* Findings and Recommendation dated October 22, 2014 (docket #35), adopted by Order dated December 16, 2014 (docket #41).

Zweizig then filed a Second Amended Complaint (docket #96) ("2nd A/C"), deleting the "Doe" defendants and adding three corporate entities as defendants: Northwest Direct of Iowa, Inc. ("NDI"); Rote Enterprises, LLC; and Northwest Direct Marketing, Inc., aka Northwest Direct Marketing (Delaware), Inc. ("NDM Delaware").[1] Shortly after the filing of the 2nd A/C, this court granted the request of defendants' attorney to withdraw (docket #99). Rote, proceeding *pro se*, filed an Answer to the 2nd A/C (docket #103). In response to the filing of Rote's Answer to the 2nd A/C, this court granted Zweizig's request that all corporate defendants obtain counsel to proceed in this case (docket #111).

Defendants named in the First A/C have filed two motions.[2] The first motion seeks summary judgment against all claims based on the statute of limitations (docket #53). The second motion seeks to impose sanctions against Zweizig's attorney for filing claims when she knew or should have known that they were barred by the applicable statutes of limitation (docket #62). At the hearing on the motions, this court agreed to construe defendants' summary judgment motion against an anticipated amended pleading, later filed as the 2nd A/C (docket #96). For the reasons that follow, both motions should be denied.

---

[1] The caption also names Northwest Direct of Eugene, Inc. ("NDE"). However, NDE is apparently an assumed business name for NDM (docket #111).

[2] These motions are restricted according to the Stipulated Protective Order (docket #47), as were many of the other documents filed in support of or in opposition to them. Accordingly, this Findings and Recommendations is being filed under seal temporarily to allow the parties to request redactions of confidential information in accordance with the Stipulated Protective Order.

## FINDINGS

### I. Jurisdiction

Federal courts have limited jurisdiction, and a case is presumed to fall outside that jurisdiction unless proven otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 US 375, 377 (1994). Under FRCP 12(h), the court is required to dismiss an action "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter." *Augustine v. United States*, 704 F2d 1074, 1077 (9th Cir 1983). The "congressional grant of diversity jurisdiction is to be strictly construed." *Kantor v. Wellesley Galleries, Ltd.*, 704 F2d 1088, 1092 (9th Cir 1983), citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 US 100, 108-09 (1941); *see also*, *Hawaii ex rel Louie v. HSBC Bank Nev., N.A.*, 761 F3d 1027, 1034 (9th Cir 2014) ("Removal and subject matter jurisdiction statutes are 'strictly construed' . . . .), quoting *Luther v. Countrywide Home Loans Servicing LP*, 533 F3d 1031, 1034 (9th Cir 2008). Moreover, a court's subject matter jurisdiction "can never be waived or forfeited," objections to the court's jurisdiction "may be resurrected at any point in the litigation," and courts are obligated to consider *sua sponte* the requirements that go to subject matter jurisdiction. *Gonzalez v. Thaler*, 132 S Ct 641, 648 (2012); *Kwai Fun Wong v. Beebe*, 732 F3d 1030, 1035 (9th Cir 2013), *aff'd*, 135 S Ct 1625 (2015).

Jurisdiction in this case is premised upon diversity of citizenship under 28 USC § 1332(a)(1). 2nd A/C, ¶ 1. This court previously denied defendants' challenge to jurisdiction. Findings and Recommendation (docket #35), pp. 3-6, adopted by Order (docket #41). Each of the additional corporate defendants are incorporated in states other than New Jersey, Zweizig's state of citizenship. 2nd A/C, ¶¶ 1-4; Answer to 2nd A/C, ¶¶ 1-4. However, Rote Enterprises, LLC, has not yet filed a Corporate Disclosure Statement, opening the door to the possibility that

jurisdiction is compromised by the addition of a non-diverse defendant.[3] *See Johnson v. Columbia Props Anchorage, LP*, 437 F3d 894, 899 (9th Cir 2006) ("an LLC is a citizen of every state of which its owners/members are citizens").

## II.  Alleged Claims

The 2nd A/C alleges three claims arising out of Zweizig's inability to collect a Judgment for $75,375.00 against NDT entered on February 14, 2012, based on an arbitration award.  *NDT v. Zweizig*, United States District Court for the District of Oregon, No. 3:11-cv-00910-PK ("*Arbitration Case*") (docket #47).  The First Claim alleges three counts for violation of the Uniform Fraudulent Transfer Act, ORS 95.200-.310 ("UFTA"), against:  (1) Rote, NDT, and NDM for violation of ORS 95.230 (Count One); (b) Rote, NDT, and NDM for violation of ORS 95.240 (Count Two); and (c) all defendants for violation of ORS 95.230 (Count Three).  The Second Claim alleges two counts for piercing the corporate veil, one against Rote and NDM based on an alter ego theory (Count One) and one against Rote based on an agency theory (Count Two).  The Third Claims is against all defendants for civil conspiracy to defraud.

## III.  Statute of Limitations

Both of defendants' motions stand or fall on whether there are sufficient undisputed facts to conclude that Zweizig's claims are barred by the applicable statutes of limitations and, if not, whether the doctrine of judicial estoppel should bar defendants' reliance on the statute of limitations.  After a careful review of the entire record, as well as the records of intertwined litigation, this court concludes that both motions should be denied due to a genuine dispute of material fact regarding the statutes of limitations.

---

[3]  Zweizig alleges that Rote Enterprises, LLC, is a limited liability company organized in Oregon in July 1995, with a principal place of business in Oregon and with members including Rote and Rote & Company, PC.  2nd A/C, ¶¶ 3, 8.  Rote asserts that Rote & Co., PC, is no longer a member of Rote Enterprises, LLC.  Answer to 2nd A/C, ¶ 8.  Local Rule 7.1 requires the corporate disclosure statement of any LLC to include the states of citizenship of all members and, if any member is an LLC, LLP or partnership, to identify the states of citizenship of those entities.

## A.  **UFTA Violations (First Claim)**

Claims under the UFTA for "relief with respect to a fraudulent transfer or obligation" are

extinguished unless an action is brought:

> (1) Under ORS 95.230(1)(a) within four years after the transfer
> was made or the obligation was incurred or, if later, within one
> year after the transfer or obligation was or could reasonably have
> been discovered by the claimant;
>
> (2) Under ORS 95.230(1)(b) or 95.240(1), within four years after
> the transfer was made or the obligation was incurred; or
>
> (3) Under ORS 95.240(2), within one year after the transfer was
> made or the obligation was incurred.

ORS 95.280.

Defendants assert that each count of the First Claim is based on the transfer of all assets

of NDT, including its "equipment and telephony," to NDM (previously known as NDE) pursuant

to the terms of a Reorganization Agreement on July 1, 2009.  Rote Decl. (docket #54), ¶ 6 &

Exs. A & B.  As a result, NDT became a subsidiary of NDM.  *Id*, ¶ 7.  Zweizig contends the

Reorganization Agreement rendered NDT insolvent, which Rote denies.  2nd A/C, ¶ 21; Answer

to 2nd A/C, ¶ 21.  Whatever the financial impact, defendants contend that Zweizig's fraudulent

transfer claims under ORS 95.230(1)(a) and (b) and ORS 95.240(1) were barred, at the latest,

four years after the effective date of the reorganization, or on July 1, 2013.  Zweizig commenced

this case on March 11, 2014, long after the four years expired.

Defendants also contend that Zweizig cannot rely on the alternative statute of limitations

of one year after the date of discovery of the transfer for violations of ORS 95.230(1)(a) and

ORS 95.240(2).  In support, defendants rely heavily on a declaration filed by Rote on April 15,

2011, stating that "NDT is a subsidiary of an affiliated group of companies, the operating entities

of which predominately provide inbound customer service and sales support for a variety of

customers." *Arbitration Case* (docket #4), ¶ 2.  Thus, according to defendants, Zweizig was on notice no later than April 15, 2011, that NDT was a subsidiary of something, should have investigated the relevant corporate relationships, and cannot now take refuge in his failure to do so.

Both of defendants' arguments should be rejected.  At a minimum, Zweizig has submitted evidence raising disputed issues of material fact as to when any transfer of assets from NDT to NDM took place.  Viewed in Zweizig's favor, multiple statements made in pleadings filed by NDT after July 1, 2009, are sufficient to give rise to the inference that no such transfer took place on that date.  From August through November 2009 in a related case, *NDT v. TouchStar Software Corp., et al.*, United States District Court of Colorado, Civil Action No. 09-cv-01750-REB-BNB ("*Colorado I*"),[4] NDT and Rote represented that NDT operated a telemarketing call center service, providing inbound and outbound call center services to its clients, and that it owned two call centers, one in Beaverton, Oregon, and one in Iowa.  Marshall Decl. (docket #58), Ex. C (Second Amended Complaint dated October 30, 2009), ¶ 7; Ex. E (Rote Decl. dated August 12, 2009), ¶¶ 3, 27-29; Ex. F (Memorandum in Support of Plaintiff's Motion for TRO and Preliminary Injunction dated August 13, 2009), p. 3; Ex. G (Information for TRO dated August 13, 2009), p. 2; Ex. H (Reporter's Transcript of Hearing on TRO/Preliminary Injunction held August 20, 2009), pp. 5-7.  Similar representations were made by NDT on September 2, 2009, when it filed *NDT v. Silicon Valley Bank*, United States District Court of Colorado, No. 1:09-cv-02106-WYD-KLM ("*Colorado II*").  *Id*, Exs. J (Complaint), ¶ 6, K (Corporate Disclosure), & Q (docket sheet).  At no time did NDT inform the court about any

---

[4] That case was originally filed in this court (*NDT v. TouchStar Software Corp.*, No. 3:09-cv-00375-BR ("*TouchStar*") and later transferred to the District of Colorado.  Marshall Decl. (docket #58), Ex. P (docket #41).

reorganization or transfer of assets by NDT to NDM on July 1, 2009, but instead represented that NDT was still an operating entity providing inbound customer service and sales support.

Rote has made several other representations contrary to any transfer of assets by NDT to NDM on July 1, 2009.  On November 15, 2009, in a letter to Judge Brown, Rote stated:  "In July of this year you heard a matter involving my wholly owned company, Northwest Direct Teleservices."  *Touchstar*  (docket #44).  On May 24, 2010, Rote testified under oath in the arbitration proceeding that he was the sole owner of NDT at all times and that NDT was "the parent company [with] operating subsidiaries."  Marshall Decl. (docket #58), Ex. L, pp. 8-9.  Not until March 10, 2011, when Rote prepared and signed NDM's tax return for July 1, 2009, through June 30, 2010, did he disclose the existence of the Reorganization Agreement and then only to the tax authorities.  Rote Decl. (docket #54), ¶ 7 & Ex. A.  This evidence is sufficient to give rise to the reasonable inference that the transfer may have actually taken place as late as March 20, 2011, when Rote signed NDM's tax return, or perhaps even as late as May 29, 2012, when NDT granted NDM a broad security interest in all its accounts.  Marshall Decl. (docket #73), ¶ 6 & Ex. W.

Similarly, Zweizig has submitted evidence that he did not discover, and could not reasonably have discovered, the fact of the transfer until July 29, 2015, when his attorney for the first time obtained a copy of NDM's tax return for July 1, 2009, through June 30, 2010, which attached the Reorganization Agreement.  Marshall Decl. (docket #69), ¶¶ 4-5.  Given her research of public records, inquiries to Rote's attorney, and NDT's responses to interrogatories, she had no reason to discover the alleged transfer prior to that date.  *Id*; Marshall Decl. (docket #73), ¶¶ 6-19.

This court need not sort out each count of the First Claim at this juncture nor address the judicial estoppel argument.  Instead, sufficient evidence of a disputed issue of material fact exists both about the actual transfer date of assets from NDT to NDM and about Zweizig's ability to discover that transfer to preclude summary judgment on the First Claim based on the statute of limitations.

### B.  Piercing the Corporate Veil (Second Claim)

The Second Claim only underscores the existence of disputed facts to preclude summary judgment based on the statute of limitations.  As fascinating as the twists and turns in the corporate relations between the various defendants may be, at least as to the Second Claim, this tempest is very much one in a teapot.  In his Second Claim, Zweizig seeks to enforce his Judgment against Rote and NDM by piercing NDT's corporate veil under either an alter ego (Count One) or agency (Count Two) theory.

Defendants contend that Zweizig has failed to show that the alleged July 1, 2009 transfer caused his harm since it predated the date he obtained his Judgment (February 14, 2012).  However, the Second Claim based on piercing the corporate veil is well within the applicable statute of limitations:

> [W]hen the plaintiff . . . files a separate action against individual defendants or files a separate cause of action against them after obtaining a judgment against the corporation . . . the limitations period must be that applicable to the original cause of action or that applicable to the enforcement of judgments.  The majority view seems to be that the proper limitations period is that applicable to enforcement of judgments.  When a plaintiff obtains a judgment against an entity, he, she, or it also obtains a judgment against any of its alter egos.  Once the trial determined that an individual is an entity's other self and there is a judgment against the entity, there is also a judgment against an individual because their identities are no longer separate.  The statute of limitations for an alter ego suit is the same as for enforcing a judgment.

114 Am Jur 3d *Proof of Facts* 403 § 29 (2010 & Supp. 2015) (footnotes and citations omitted).

///

The "handful of cases dealing with the specific question of what limitation period applies to an action seeking to pierce the corporate veil," as alleged in Zweizig's Second Claim, "have uniformly held that such actions should be construed as actions to enforce a judgment." *United States v. Clawson Med. Rehab. & Pain Care Ctr., P.C.*, 722 F Supp 1468, 1470 (ED Mich 1989) (citations omitted).  Alter ego is an equitable doctrine that allows a party to recover derivatively for the debts of a controlled corporation.  Since the liability of an alter ego entity is derivative of the underlying debtor corporation, "it is both logical and just that the longer limitations period for enforcement of a judgment be imputed to such an action." *Id* at 1471 (footnote omitted).

In Oregon, "judgment remedies for a judgment in a civil action expire 10 years after the entry of the judgment."  ORS 18.180(3).  It is now just over four years since Zweizig obtained his judgment against NDT on February 14, 2012, and by extension, against those persons or entities acting as the alter egos of NDT.  Thus, to the extent Zweizig seeks to pierce NDT's corporate veil, his Second Claim is properly construed as one to enforce the Judgment against NDT's alter egos and is clearly timely.

## C.  Conspiracy (Third Claim)

Finally, the Third Claim alleges a common law claim against all defendants for a civil conspiracy to defraud.  That claim is subject to a two-year statute of limitations which is "deemed to commence only from the discovery of the fraud or deceit." *Guyot v. Multnomah Cnty.*, 51 Or App 373, 378, 625 P2d 1344, 1347 (1981), quoting ORS 12.110(1).  As detailed above, Zweizig has submitted evidence which, if viewed in his favor, is sufficient to give rise to the inference that he did not and could not reasonably discover the facts underlying this claim

until July 29, 2015.  Accordingly, for the same reasons given above with respect to his First Claim, the record contains sufficient evidence which, at a minimum, prevents summary judgment on the Third Claim based on the statute of limitations.

For all of the above reasons, defendants' bid to knock Zweizig out of court and to obtain sanctions against his attorney based upon a statute of limitations argument should be rejected.

## RECOMMENDATIONS

For the reasons set forth above, defendants' Motion for Summary Judgment (docket #53) and Motion for Sanctions (docket #62) should be DENIED.

## SCHEDULING ORDER

The Findings and Recommendations will be referred to a district judge.  Objections, if any, are due Monday, March 07, 2016.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

DATED  February 19, 2016.

s/ Janice M. Stewart
_____
Janice M. Stewart
United States Magistrate Judge
